IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

FARLAN KNAPP,                              )
                                           )
                    Plaintiff,             )        Civil Case No. 08-210-KI
                                           )
        vs.                                )        OPINION AND ORDER
                                           )
MICHAEL ASTRUE, Commissioner,              )
Social Security Administration,            )
                                           )
                    Defendant.             )
_____)

       Merrill Schneider
       Schneider Law Offices
       P. O. Box 16310
       Portland, Oregon  97292-0310

            Attorney for Plaintiff

       Karin J. Immergut
       United States Attorney
       District of Oregon
       Britannia I. Hobbs
       Assistant United States Attorney
       1000 S. W. Third Avenue, Suite 600
       Portland, Oregon  97204-2902

David Morado
Regional Chief Counsel
Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Farlan Knapp brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

Page 2 - OPINION AND ORDER

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert.

denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner

determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is

engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds

to step two and determines whether the claimant has a medically severe impairment or

combination of impairments.  A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and

416.920(c).  If the claimant does not have a severe impairment or combination of impairments,

disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Knapp had severe impairments of coagulation defects from hemophilia, HIV disease, hepatitis C, and alcohol abuse. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After considering the entire record, the ALJ found that Knapp had the residual

functional capacity to perform medium work; could sit, stand, and walk for at least six hours in

an eight hour workday; could lift and carry up to 50 pounds on an occasional basis and up to

25 pounds on a frequent basis; could use both upper and lower extremities for pushing, pulling,

and overhead reaching, and had no postural or environmental limitations.  The ALJ concluded

that Knapp could return to his prior work as a production manager.  Thus, he had not been

disabled under the Act at any time since August 31, 2005, the date his application was filed.

## FACTS

Knapp, who was 48 years old at the time of the ALJ's decision, has not quite finished a

GED and has prior work experience as an insulation installer and production manager.  Knapp

alleges that he has been disabled since November 1, 2004 due to hemophilia, HIV disease

(diagnosed in 1986), and hepatitis C (diagnosed in 1997).

Medical records indicate that Knapp's HIV disease and hepatitis C had been mostly

asymptomatic and that he was considered a nonprogressor or slow progressor.  He now

complains of daily fatigue since November 2006 and significant abdominal pain and nausea due

to his failing liver since January 2007.  Knapp rated the joint pain in his knees, hips, and hands as

three out of ten, characterizing it as "just annoying."  Tr. 608.  Knapp's doctors were discussing

whether to initiate HIV treatment in 2006, as well as encouraging him to treat the hepatitis C.

Knapp also suffers from depression, causing him to isolate himself due to difficulty interacting

with people and to have disrupted sleep patterns.  In October 2005, Knapp claimed that he could

still do the same activities but that it took him longer to complete them.  He was able to walk a

mile before needing to rest for ten minutes.  Knapp naps for an hour or two a day.

Knapp lives in an RV at his daughter's home.  He helps watch her small children and performs some chores around the house.

## DISCUSSION

I.    Subjective Symptom Testimony

Knapp contends that the ALJ improperly rejected his subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so."  Id.  Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The first reason given by the ALJ is that the medical evidence is totally at odds with Knapp's description of his impairments.

Knapp argues that this reason is not supported by substantial evidence because the ALJ also found that he had severe impairments of hemophilia, HIV disease, and hepatitis C.  Knapp

notes his diagnosis of cirrhosis and ascites[1] and his hospital visits during the relevant time period

to receive massive infusions of factor VIII for his hemophilia.  Knapp also claims his medical

records document a history of ongoing trauma to his joints which explain the joint pain in

conjunction with his hemophilia.

When discrediting Knapp for this reason, the ALJ noted that all of the HIV quantitative

testing indicates that he is a slow progressor, that his viral load was never greater than 2,000, and

that he did not complain of fatigue to his doctors.  Medical records indicate that Knapp's

abdominal pain flared up after a bout of heavy drinking and completely resolved when he

stopped.  The records also indicate that Knapp generally did not use factor VIII except when he

fell and injured a joint.  The ALJ's reasoning that Knapp's stated limitations are inconsistent with

the medical records is supported by substantial evidence and is a clear and convincing reason for

discrediting Knapp.

The ALJ noted that Knapp used up his $100,000 settlement on his kids and by blowing it,

a comment Knapp made at the hearing.  The ALJ was concerned that receipt of the money

indicates a lack of motivation to work and a greater motivation to obtain public assistance now

that the money is gone.  The ALJ was also concerned that this money was not reported to the

Commissioner because it was not considered in the SSI financial eligibility determination.

Knapp contends that the receipt of a class settlement and a workers compensation settlement are

not evidence of a lack of motivation to work.  I agree with Knapp that neither the receipt of a

settlement, nor the way he spent it, are indicative of lacking credibility.  There might be an issue

---

[1] An accumulation of serious fluid in the spaces between tissues and organs in the abdominal cavity.  Merriam Webster's Medical Desk Dictionary 58 (1996).

concerning SSI eligibility but the money was apparently gone by the time Knapp applied in August 2005.

Knapp disputes the ALJ's conclusion that he is an alleged chronic alcohol abuser who underreports his use of substances. According to Knapp, he did not deny drinking but only clarified that he did not drink heavily on a regular basis.

The ALJ noted that Knapp stated he no longer used alcohol until confronted with hospital records for liver disease which document drinking. The ALJ was troubled that Knapp stated that he drank because he was on vacation and had not continued. At the hearing on May 17, 2007, Knapp stated that the last time that he drank was a long time ago when a friend visited. On February 21, 2007, however, Knapp told his physician that he had not been drinking for two weeks but was episodically drinking heavily before that. Tr. 564. I agree with the ALJ that Knapp has not been forthright about his drinking. Thus, this is another clear and convincing reason for discrediting the subjective symptom testimony.

Knapp also disputes the ALJ's reasoning that Knapp's daily activities are inconsistent with his symptom testimony. According to Knapp, the ALJ selectively picked activities from the record and that his limited activities are not analogous to sustained work activity.

The ALJ noted that Knapp admitted walking 1.5 miles a day; takes care of his grandchildren; goes grocery shopping; does laundry, dishes, and yard work; and worked full time for seven months in 2004 until he cut the tip off his finger. I agree with Knapp to a limited extent. Knapp's daughter stated that he only watched the children for one or two hours at a time. The yard work was limited to watering flowers and mowing a very small patch of grass. The house chores were not extensive. These facts are balanced, however, with Knapp's ability to

walk a mile before he needs to rest and the work he performed in 2004 prior to quitting for a

nondisability reason. Both of these indicate the capacity to put out a sustained effort. I conclude

that Knapp's daily activities are a clear and convincing reason to reject Knapp's testimony.

Knapp clarifies that he never attempted to link his fatigue exclusively to his HIV so the

fact that he is considered a slow progressor for HIV disease is not relevant. Knapp does suffer

from several illnesses which can cause fatigue so it is not easy to determine the source of the

symptom. The quantitative test results which characterize his HIV disease are relevant factors

for the ALJ to consider, however, because they show that it is unlikely that the HIV is causing

any fatigue.

The ALJ also noted that Knapp injured himself falling while fishing the only two times he

had been fishing in years. The injuries occurred in August and October 2005 and both resulted in

trips to the emergency room, with the one resulting in the removal of Knapp's spleen. The ALJ

considered this too coincidental to be credible. I agree.

The ALJ also noted that Knapp had never taken HIV medication and did not have any

interest in starting hepatitis C medication until March 2007. The failure to seek more aggressive

treatment can show that the symptoms are not as disabling as reported. Tommasetti v. Astrue,

533 F.3d 1035, 1039 (9th Cir. 2008).

Although the ALJ's reliance on Knapp's settlement money was inappropriate, the ALJ

did give several clear and convincing reasons for his decision to reject Knapp's testimony. The

fact that the ALJ improperly considered some reasons for finding plaintiff's credibility

undermined does not mean that the ALJ's entire credibility assessment is improper. Batson, 359

F.3d at 1197.  I find that the ALJ did not err in discrediting Knapp's subjective symptom testimony.

II.    <u>Lay Testimony</u>

Knapp contends that the ALJ did not properly evaluate the third-party statement of Knapp's daughter, Andrea Ellis.  Knapp argues that Ellis's statements are not in conflict with his daily activities.

The Commissioner claims the ALJ did not have to include Ellis's statement of Knapp's symptoms in the residual functional capacity because Knapp did not demonstrate that Ellis's statement related to medically determinable impairments supported by the record and not dependent solely on his subjective complaints.  The Commissioner also contends that any error is harmless because the residual functional capacity for medium exertion work is reasonable given the medical findings.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. <u>Stout v. Commissioner of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

In May 2005, Ellis stated that Knapp could no longer mow the grass because he has to stop so frequently, that a few times a month he watches her children for an hour, and that he occasionally helps with chores like loading the dishwasher but that he cannot do much because of lack of energy.  In October 2005, Ellis stated that Knapp helps with her children, laundry, dishes, mild yard work, and shopping; that his sleep is affected from pain and depression; that he is not

Page 10 - OPINION AND ORDER

focused; and that he has pain when reading, walking, and kneeling.  Ellis did not think that

Knapp could work at a normal job.

The ALJ stated that the statements are in conflict with Knapp's admitted activities of

walking 1.5 miles a day, taking care of his grandchildren, going grocery shopping, and doing

laundry, dishes, and yard work

Ellis's statement concerning Knapp's chores around the house do not actually conflict

with his admitted activities but her statements do provide more information about the length of

time Knapp can spend on these chores.  Her statements on Knapp's limitations do conflict,

however, with Knapp's ability to walk extended distances before needing a rest.  In October

2005, Knapp stated in a questionnaire that he could walk a mile before he needed to rest for ten

minutes prior to resuming walking.  This is inconsistent with having problems performing minor

household chores like loading a dishwasher.  The ALJ did not err in rejecting Ellis's statements.

III.    Residual Functional Capacity

Knapp claims that the ALJ did not properly analyze Knapp's residual functional capacity

because he failed to include limitations described by Knapp and Ellis.

This claimed error is moot based on my analysis above that the ALJ committed no error

concerning Knapp's and Ellis's statements about Knapp's limitations.

IV.    Vocational Testimony

Knapp argues that the ALJ improperly made a vocational determination when he relied

on the testimony of a vocational expert who testified at the hearing held for a prior unsuccessful

application nearly three years before this opinion.  Knapp maintains that the ALJ should have had

a vocational expert review his current condition, which had worsened.  Further, Knapp contends

that he should have the opportunity to cross-examine a vocational expert and rebut his testimony.

The Commissioner argues that a vocational expert's testimony is useful but not required

at step four.  The Commissioner also notes that the vocational expert's testimony from the prior

hearing was based on the same hypothetical and is thus still valid.

I concluded above that the ALJ did not err when he formulated Knapp's residual

functional capacity.  Under the five-step analysis, the claimant bears the burden in step four of

proving that he cannot return to his past work.  Thus, in step four, testimony from a vocational

expert is useful but is not required.  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).  Here,

the ALJ had the benefit of prior vocational expert testimony because the hypothetical would not

have changed.  Thus, the ALJ did not err in failing to call a second vocational expert.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.

IT IS SO ORDERED.

Dated this _____5th_____ day of March, 2009.


                                        /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge